**Fletcher Thomas MANN, Petitioner-Appellant,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 87–1874.

United States Court of Appeals, Fifth Circuit.

March 15, 1988.

Melvyn Carson Bruder, Dallas, Tex., for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Fletcher Thomas Mann appeals from the district court's denial of his habeas corpus petition. As we find that Mann failed to file timely notice of appeal from the judgment, we are compelled to dismiss the appeal.

## I.

Fletcher Thomas Mann ("Mann") is a state prisoner currently incarcerated by the Texas Department of Corrections. Mann was convicted of the capital murder of Christopher Lee Bates and was sentenced to death. The facts surrounding the commission of the crime are recited in detail in *Mann v. State*, 718 S.W.2d 741, 743 (Tex. Crim.App.1986), and will not receive further treatment in this opinion. Mann exhausted his appellate and post-conviction

remedies in the state courts and then sought federal habeas relief under Title 28, United States Code, section 2254. On October 20, 1987, the district court issued its memorandum opinion and order denying habeas relief. The opinion and the order were entered on the docket the same day. *See* Fed.R.Civ.P. 58, 79(a). The district court also ordered that its previously entered stay of execution remain in effect pending the filing of notice of appeal and, if one was timely filed, the resolution of Mann's case by this court. Mann filed notice of appeal from the district court's order on November 20, 1987.

On November 23, the State filed an "Opposition to Petitioner's Request for Certificate of Probable Cause to Appeal" ("Opposition").[1] Since Mann never filed a request for a certificate of probable cause to appeal, the district court considered the Opposition as a motion for reconsideration of the previously entered stay of execution. The district court denied this motion for reconsideration on November 30. On December 9, the district court issued a "Certificate as to Probable Cause" to appeal. On December 30, the State filed with this court its "Motion to Dismiss for Want of Jurisdiction" in which it challenges the timeliness of Mann's notice of appeal.

## II.

Federal Rule of Appellate Procedure 4(a)(1) provides, in pertinent part:

In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from....

In the instant case, the district court's order was entered on October 20, 1987. Mann's notice of appeal would have been timely if filed on or before November 19, 1987. *See* Fed.R.App.P. 26(a); Fed.R.Civ. P. 6(a). Mann's notice of appeal was not

filed until November 20, 1987. It is possible, however, to secure an extension of time for filing notice of appeal under Federal Rule of Appellate Procedure 4(a)(5) which provides, in pertinent part:

The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a).... No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

In the instant case, the Rule 4(a)(5) period ended on December 19, 1987, a Saturday. Thus, the time for requesting an extension of time to file notice of appeal expired on the following Monday, December 21, 1987. Mann did not file a motion to extend the time for filing notice of appeal within the Rule 4(a)(5) period. Given these circumstances, the State argues, Mann's notice of appeal failed to confer jurisdiction on this court and, consequently, we must dismiss Mann's appeal.

By contrast, Mann contends that dismissal would be inappropriate. He argues initially that Rule 4, as a "court-created rule," is not inherently jurisdictional and, therefore, noncompliance with its requirements need not bar appellate review. Mann asserts that where the ends of justice require a relaxation of the rule, we should exercise our "discretion" to accept jurisdiction. Next, Mann contends that since his notice of appeal was filed after the expiration of the Rule 4(a)(1) thirty-day period, but before the passage of the Rule 4(a)(5) thirty-day period, and the district court granted a certificate of probable cause, we should construe the district court's action as a finding of good cause or excusable neglect. Finally, Mann argues that the "unique circumstances" of this case warrant treatment of the untimely filed notice of appeal as though it had been timely filed. Specifically, Mann points to his "reliance" on the

---

1. In the State's Opposition, it notes that "Mann has now filed his notice of appeal and request for certificate of probable cause."

district court's issuance of a certificate of probable cause and the State's representation in its Opposition that notice of appeal had been filed. Mann's contentions are without merit.

■ "We have often spoken of the notice requirement as 'jurisdictional' despite the clear language in Federal Rule of Appellate Procedure 1(b) that the rules 'shall not be construed to extend or limit the jurisdiction of the court of appeals as established by law.'" *Sanchez v. Bd. of Regents of Texas Southern Univ.*, 625 F.2d 521, 522 n. 1 (5th Cir.1980) (quoting Fed.R. App.P. 1(b)). The Rule 4(a) notice requirement, therefore, is not jurisdictional in the sense of subject matter jurisdiction. *Sanchez*, 625 F.2d at 522 n.1 (citing 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.02[2] at 4–13 and 4–14 (2d ed. 1987)). Rather, it is a mandatory precondition to the exercise of jurisdiction. *Sanchez*, 625 F.2d at 522 n.1. Mandatory preconditions to the exercise of jurisdiction are often spoken of as jurisdictional, however, in the sense that absent compliance, the court cannot acquire jurisdiction of the cause, though otherwise it is a case within the court's subject matter jurisdiction or, as it is sometimes called, "competence." 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.02[2] at 4–14 (2d ed. 1987). In this sense, at the very least, compliance with the thirty-day time limit of Rule 4(a) and Title 28, United States Code, Section 2107[2] is "mandatory and jurisdictional." *See Browder v. Director, Ill. Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1977); *Pryor v. United States Postal Serv.*, 769 F.2d 281, 284 (5th Cir.1985). In any event, we must obey the mandatory provisions of the rules whether they are referred to as mandatory, jurisdictional, or mandatory

**2.** Section 2107 provides, in relevant part:

Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.

. . . .

The district court may extend the time for appeal not exceeding thirty days from the expi-

and jurisdictional. *See Ryals v. Estelle*, 661 F.2d 904, 905 (5th Cir. 1981) (timely filing of the notice of appeal "is a necessary prerequisite for appellate review"); *Briggs v. Lucas*, 678 F.2d 612, 613 (5th Nov. Cir.1982) (where notice of appeal was untimely, we lack appellate jurisdiction).

■ Next, Mann points to the fact that his notice of appeal was filed well within the limitation period prescribed by Rule 4(a)(5), and that during this period, the district court issued a certificate of probable cause. He argues that we should either construe the granting of the certificate of probable cause as a finding of good cause or excusable neglect, or remand the case to the district court for a determination of whether it treated the certificate of probable cause as a finding of good cause or excusable neglect. Mann's first assertion is foreclosed by our decision in *Ryals*, a case whose procedural posture was quite similar to that of the instant case. In *Ryals*, notice of appeal was filed after the thirty-day period prescribed by Rule 4(a)(1) but within the following thirty days. The district court granted a certificate of probable cause to appeal apparently after the second thirty-day period expired. In *Ryals*, we relied on our decision in *Barksdale v. Blackburn*, 647 F.2d 630, 631–32 (5th Cir. June 1981), *vacated on other grounds*, 454 U.S. 1118, 102 S.Ct. 962, 71 L.Ed.2d 106 (1981), for the proposition that:

"We cannot construe the district court's grant of a certificate of probable cause to appeal ... as an implicit finding of excusable neglect in the tardy filing of the notice of appeal, for neither the question of timeliness of filing nor that of an excuse for failure to file timely was presented to the district court...."

*Ryals*, 661 F.2d 904, 905 (quoting *Barksdale*, 647 F.2d at 631–32).[3]

ration of the original time herein prescribed, upon a showing of excusable neglect based on failure of a party to learn of the entry of the judgment, order or decree.

**3.** Our decision in *Barksdale* was based on what we initially assumed were a set of facts identical to those in the instant case. Accordingly, we dismissed the appeal from the district court's denial of the habeas petition as not being timely filed. The United States Supreme Court, how-

■ Mann argues, however, that *Ryals* contains language modifying *Barksdale* which "affords a meaningful solution to the issue presented in this case." Specifically, he points to a passage in *Ryals* where we stated that "[h]ad the certificate of probable cause been granted within the 30–day limitation, and had the district court treated it as a motion for a finding of excusable neglect and granted the same, we would not have refused to find jurisdiction." *Ryals*, 661 F.2d at 906. Mann concedes that *Ryals* and *Barksdale* constrain us from accepting the certificate of probable cause as a tacit finding of good cause or excusable neglect since the certificate of probable cause was silent on the matter. He argues, however, that since the certificate of probable cause did not address the matter, and since the district court "presumptively knew at the time he granted the certificate that Mann's notice of appeal was not timely filed," it would be reasonable for us to conclude that the district court considered the untimely notice and granted the certificate only after determining that the tardy filing was justified. Mann argues, on the basis of *Ryals* dicta, that we should remand the case to the district court for a determination of whether it treated the certificate of probable cause as a finding of good cause or excusable neglect.

The State is correct in its assertion that the district court's silence, far from working in Mann's favor, is fatal to his attempted use of the *Ryals* dicta. In *Henry v. Estelle*, 688 F.2d 407 (5th Cir.1982), we were confronted by a set of facts identical to those presented here: notice of appeal was filed after the expiration of the Rule 4(a)(1) thirty-day period; there was no request for an extension of time for filing notice of appeal; and the district court granted a certificate of probable cause before the Rule 4(a)(5) period expired, using a printed form and making no mention of good cause or excusable neglect for the late filing. In dismissing the "attempted appeal" for want of jurisdiction, we noted:

The lower court's August 26, 1981 grant of the certificate of probable cause is of no import. Neither the request for certificate of probable cause nor the order granting it in any way alludes to the fact that the notice of appeal was untimely or to any reason it was filed subsequent to its due date. The request for certificate of probable cause does not request any extension of time for filing notice of appeal, and indeed does not mention anything at all about notice of appeal. The printed form order granting the certifi-

---

ever, vacated that dismissal and remanded the case for our consideration. *Barksdale v. Blackburn*, 454 U.S. 1118, 102 S.Ct. 962, 71 L.Ed.2d 106 (1981). They did so on the ground that we had improperly begun counting the running of the Rule 4(a)(1) thirty-day period from the date of the filing of the order rather than from the date of entry of the judgment. Recognizing that we had miscounted and that the petitioner's notice of appeal was in fact timely under Rule 4(a)(1), we went on to reach the merits of the petitioner's claims. The Supreme Court did not condemn the logic behind our initial decision in *Barksdale*. Moreover, our initial decision in *Barksdale* has been cited by other cases in the period since its vacation by the Supreme Court, *see Jones v. Estelle*, 693 F.2d 547, 549 (5th Cir. 1982), *cert. denied*, 460 U.S. 1072, 103 S.Ct. 1528, 75 L.Ed.2d 950 (1983); *Williams v. Treen*, 671 F.2d 892, 895 (5th Cir.1982), and its rationale was expressly adopted in *Ryals*, albeit before the Supreme Court's action. Finally, *Ryals* was followed in *Henry v. Estelle*, 688 F.2d 407 (5th Cir.1982), and has been cited in other cases, *see Briggs v. Lucas*, 678 F.2d 612, 613 (5th Cir.1982); *Williams*, 671 F.2d at 895. Therefore, we conclude that the analysis first articulated in *Barks-*

*dale*, and subsequently adopted in *Ryals*, is the law in this circuit.

Mann's reliance on footnote 1 of the slip opinion in *Starling v. Estelle*, 651 F.2d 1082 (5th Cir. July 1981), is clearly misplaced. In the footnote, the *Starling* panel noted the late filing of notice of appeal but went on to construe the district court's grant of a certificate of probable cause as a finding of excusable neglect. *See Ryals*, 661 F.2d at 906 n. 4. The panel in *Starling* apparently recognized that this position was inconsistent with prior precedent, for it later withdrew the footnote. As the *Starling* panel went on to reach the merits of the case, however, an implicit conflict would seem to exist between *Starling* and *Barksdale*. *See id.* at 906. "That conflict, however, is in appearance only." *Id.* As we pointed out in *Ryals*, the *Starling* panel was bound by the result reached in *Barksdale*. *Id.* "No doubt the *Starling* panel attempted to comply with this rule by summarily ending footnote one's brief life; however, by going on to the merits, the underlying rationale was not killed, but merely maimed." *Id.* Mann's reference to *Starling*, therefore, is of no avail.

cate of probable cause does not purport to extend the time for notice of appeal or to find that there was excusable neglect or good cause for the failure to sooner file the notice of appeal.

*Henry,* 688 F.2d at 407.[4] Mann's attempt to find succor in the *Ryals* dicta, therefore, is unavailing.[5]

Finally, Mann contends that this case presents "unique circumstances" calling for the exercise of our "discretion" to entertain the appeal. Specifically, Mann asks us to find that his reliance on the granting of the certificate of probable cause coupled with the State's recitation in its Opposition that notice of appeal had been filed and the State's failure to raise the question of the untimely filed notice of appeal until after the Rule 4(a)(5) grace period expired is sufficient to preclude dismissal. Even if we were free to relax the Rule 4(a) requirements, a dubious proposition given the mandatory nature of the timeliness inquiry, we are unable to conclude that this case warrants such treatment.

Mann points to *Thompson v. Immigration & Naturalization Serv.,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), and *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9

---

**4.** Mann also contends that remanding the case to the district court would have the salutory effect of harmonizing this case with our earlier decision in *United States v. Quimby,* 636 F.2d 86 (5th Cir. Feb. 1981). In *Quimby,* a criminal defendant filed notice of appeal requesting leave to proceed *in forma pauperis* twelve days after the entry of judgment of conviction. This notice was untimely under Federal Rule of Appellate Procedure 4(b), which governs appeals in criminal cases. Three days later, however, the district court issued an order stating it was unnecessary for the district court to grant Quimby's request for appointed counsel, and authorized him "to proceed on appeal in forma pauperis without authorization by this Court." *Quimby,* 636 F.2d at 89. We concluded that while the district court never explicitly stated that it was making a finding of excusable neglect for extending the time for filing notice of appeal, its ruling on the motion to appoint counsel and allow appeal *in forma pauperis* constituted such a finding. *Id.* Mann's reliance on *Quimby,* however, is misplaced for several reasons.

First and foremost, the appellate rule governing notice of appeal in civil cases differs from that which governs in criminal cases. While we recognize that habeas corpus proceedings are of a hybrid nature in many respects, we cannot ignore the explicit differences in the rules. Under Rule 4(a)(5), the district court's finding of excusable neglect had to be predicated upon an application by the petitioner for such a finding; the district court could not have found excusable neglect *sua sponte.* Under Rule 4(b), however, "[u]pon a showing of excusable neglect the district court may, before or after the time has expired, *with or without motion* and notice, extend the time for filing notice of appeal...." Fed.R.App.Proc. 4(b) (emphasis added). While the distinction may be subtle, it is nevertheless compelling.

Next, we note that *Quimby* relied upon *Sanchez* for the proposition that upon a showing of excusable neglect, a district court may, with or without motion and notice, extend the time for filing notice of appeal. *Quimby,* 636 F.2d at 89. In *Sanchez,* we reviewed the 1979 amendments to Rule 4 and recognized the considerable confusion in the case law interpretations of the original rule "that gave relief arguably beyond the face of the text." *Sanchez,* 625 F.2d at 523. Ultimately, we held that notices of appeal filed prior to thirty days after the *Sanchez* decision, rendered August 25, 1980, would be considered under old Rule 4(a). *Id.* Notice of appeal in *Quimby* was filed in September of 1979, well within the *Sanchez* grace period under which the old rule still applied. Under the "case law gloss of the old rule," courts were allowed to treat a notice of appeal filed after the thirty-day period for notice of appeal, but within sixty days of judgment, as a motion to extend the time for filing notice of appeal. *Id.; see also Scott v. Wainwright,* 698 F.2d 427, 428 (11th Cir.1983). Rule 4(a)(5) now reads, in pertinent part, that "[t]he district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal *upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)."* *Sanchez,* 625 F.2d at 523. The highlighted portion of the newer version explicitly imposes a motion requirement. *Quimby,* therefore, insofar as it fell within the *Sanchez* grace period, may well have been decided under the case law interpreting Rule 4(a) prior to the 1979 amendments. In so noting, we do not presume to determine *Quimby'*s continuing validity in the Rule 4(b) context. We merely find that it is inapplicable in the case at bar. As a result, we cannot agree with Mann that *Quimby* is in conflict with the *Barksdale/Ryals* analysis.

**5.** In passing, we note that the petitioner in *Ryals* was proceeding *pro se,* a fact we carefully stressed immediately prior to writing the passage quoted above. Therefore, in so far as our dicta in *Ryals* is of any relevance, its persuasive force is lessened by the fact that Mann is proceeding with the assistance of counsel.

L.Ed.2d 261 (1962), in support of his suggestion that we need be less than punctilious in our observance of the formalities of Rule 4(a) in the instant case. In *Harris*, the petitioner, a presently defunct interstate motor carrier, engaged local counsel in a suit controlled by petitioner's general counsel, who had been delegated sole responsibility for all corporate decisions with respect to pending litigation by virtue of the fact that the petitioner was winding up its business. The petitioner's suit was ultimately dismissed by the district court and a subsequent motion for new trial was denied. On the date the new trial motion was denied, the general counsel was vacationing in Mexico and could not be reached. Due to his inability to contact the general counsel in order to ask whether to appeal, the local counsel instead asked the district court for an extension of time within which to appeal beyond the thirty-day limit prescribed by Federal Rule of Civil Procedure 73(a). With opposing counsel present, the district court granted the motion. The court of appeals held that a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment had not been made out to the motion judge. Therefore, since there was no basis for the extension of time, the court of appeals dismissed the appeal. The Supreme Court vacated that decision and held:

> In view of the obvious great hardship to a party who relies upon the trial judge's finding of "excusable neglect" prior to the expiration of the 30–day period and then suffers reversal of the finding, it should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling.

*Harris*, 371 U.S. at 217, 83 S.Ct. at 285.

In *Thompson*, the district court denied the petitioner's petition for naturalization. Twelve days later, the petitioner served notice that he would file motions to amend the trial court's findings and for a new trial. The Government raised no objections as to the timeliness of these motions, and the trial court specifically declared that the "motion for a new trial" was made "in ample time." The district court denied the motions and the petitioner filed notice of appeal within sixty days of the denial of the motions but not within sixty days of the original entry of judgment. The court of appeals ultimately dismissed the appeal on the ground that notice of appeal had not been filed within the sixty-day period prescribed by Rule 73(a) since the petitioner's motions were untimely, and thus could not toll the running of the time for appeal.

The Supreme Court found that Thompson's case fit squarely within the letter and spirit of *Harris*:

> Here, as there, petitioner did an act which, if properly done, postponed the deadline for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal. Accordingly, in view of these "unique circumstances," we grant the writ of certiorari, vacate the judgment, and remand the case to the Court of Appeals so that petitioner's appeal may be heard on the merits.

*Thompson*, 375 U.S. at 387, 84 S.Ct. at 399 (citation omitted).

■ The "unique circumstances" justifying reinstatement of the appeal in *Harris* and *Thompson* are simply not implicated in the instant case. Unlike the petitioners in *Harris* and *Thompson*, Mann did no act which, if properly done, would have postponed the deadline for filing notice of appeal. Mann merely failed to file timely notice of appeal. The district court made no specific finding of good cause or excusable neglect for the late filing and the granting of a certificate of probable cause cannot be construed as such a finding. The district court did not expressly state that the notice of appeal was timely filed, nor, in fact, did it even mention the notice of

appeal. Mann, therefore, cannot be said to have relied on the district court's action in order to excuse his failure to move for an extension under Rule 4(a)(5).[6] We are without jurisdiction to entertain Mann's appeal, and must grant the State's motion to dismiss.

Much as we regret having to dismiss Mann's appeal on jurisdictional grounds, the law in this area permits no other result. *See Williams v. Treen*, 671 F.2d 892 (5th Cir.1982), *cert. denied*, 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). Our aversion to doing so, however, is tempered by the fact that Mann's substantive claims have received extensive and thorough judicial attention. Neither the Texas courts nor the district court below have found any merit in Mann's position. Regardless of our view as to the ultimate merit of Mann's claims, however, we are constrained on jurisdictional grounds from entertaining the appeal.

### III.

Accordingly, we DISMISS the appeal.

---

6. While opposing counsel in both *Harris* and *Thompson* failed to oppose the original act by the petitioner that resulted in an extension of the time for filing notice of appeal, the Supreme Court neither cited that fact as relevant, nor found it to be dispositive. Here, Mann argues that the State misled him by failing to call attention to his untimely filing of notice of appeal. In its Opposition, the State merely noted that notice of appeal was filed. That statement was true and was not in any way deceptive. The State was under no affirmative duty to ensure that Mann pursue the most efficacious course of litigation. It was incumbent upon Mann to make sure that notice was timely filed and, if not, to discover that fact and request an extension by way of a motion showing good cause or excusable neglect.