LUTTIG, Circuit Judge,
concurring in part and concurring in the judgment:
Federal Rule of Civil Procedure (“FRCP”) 11(c) provides that a court “may” impose sanctions based on a party’s motion, but specifies that the imposition of sanctions is “subject to the conditionf]” that the movant comply with the safe harbor provisions listed in subdivision (c)(1)(A). I concur in the majority’s opinion to the extent that the majority concludes that Rule ll’s safe harbor provisions are “mandatory,” in the sense that “failure to comply with th[ose] procedural requirements precludes the imposition of the requested sanctions”; that Rule 11(c) “serves to limit the power of the district court to impose sanctions under the rule, by expressly conditioning the court’s authority to impose sanctions upon compliance with the safe harbor provisions”; and that the safe harbor provisions are thus “conditions precedent to the imposition of sanctions” such that “[i]f a non-compliant motion -nonetheless is filed with the court, the district court lacks the authority to impose the requested sanctions.” Ante at 389. I believe that these conclusions follow from the plain text of Rule 11.
But despite these categorical-sounding conclusions, the majority goes on to hold that if no objection is made to a movant’s non-compliance with the safe harbor provisions, and sanctions on that motion are imposed by the lower court, this court may yet address that error if such meets the “case-specific” and ultimately “discretionary]” requirements of plain-error review. Ante at 398. On this score, I do not believe that the majority accords sufficient *400 weight to Rule ll(c)’s express conditions on the court’s authority to impose sanctions. If it is correct that a movant’s noncompliance with the safe harbor provisions deprives a court of the power to impose sanctions on a party’s motion, then I, like Judge King, am quite doubtful that that power is recovered through a party’s failure to note the error. See post at 398. I certainly do not believe such to be required, and especially not by the Supreme Court’s recent opinion in Kontrick v. Ryan, — U.S. -, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). While I, too, would reverse the district court’s imposition of Rule 11 sanctions on Brickwood, in my view the defendants’ non-compliance with the safe harbor provisions, even though not objected to below, necessitates reversal of the sanctions. To the extent that the majority holds that reversal on this ground is not required, I concur only in the judgment of the court.
I.
As suggested by the majority, Kontrick rested on a dichotomy between mandatory “rule[s] governing subject-matter jurisdiction,” which cannot be waived by a party and thus can be raised at any stage in a proceeding (although not collaterally), and “inflexible claim-processing rule[s],” which, “even if unalterable on a party’s application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.” Ante at 391-92. As framed by the majority, the question of whether Brickwood forfeited its right to assert the defendants’ non-compliance with the safe harbor provisions by failing to raise the issue until this appeal is to be decided by determining into which of these two categories Rule 11(c) falls. In concluding that Rule 11(c) is not “jurisdictional” within the intendment of Kontrick, and thus can be forfeited, the majority distinguishes Rule 11(c) from Federal Rule of Appellate Procedure (“FRAP”) 4 and FRCP 59, which in the past have been held to be “jurisdictional,” and which the majority contends are properly termed “jurisdictional” even post-Kontrick.
I agree with the majority that Rule 11 is not “jurisdictional” within the intendment of Kontrick. But I disagree with the majority that Rules 4 and 59 are “jurisdictional” under Kontrick. As explained below, however, I believe that, while neither Rule 4 nor Rule 59 (nor, in the end, Rule 11(c)) fits within either of Kontrick’s categories, the conditions of all three rules are un-waivable.
A.
As an initial matter, I believe the majority has overlooked the historical and structural reasons that Rules 4 and 59 have been considered “jurisdictional,” and consequently has erroneously dismissed the relevance of Rule ll(c)’s text on the basis that “neither Rule 4 ... nor Rule 59 contains language expressly limiting the power of the court to act on an untimely filing, yet these rules are considered to be jurisdictional.” Ante at 394. Although that description of the texts of Rules 4 and 59 is literally correct, it has little relevance. The “jurisdictional” character of these rules has been based not alone on their wording, or even so much on their wording, but on the wording of other rules, such as FRCP 6(b) and Federal Rule of Criminal Procedure (“FRCrP”) 45(b), which limit the court’s power to enlarge the period in which the relevant rule (e.g., Rule 59) requires a party to act.[1]
*401 In fact, in holding that Rule 45(b) is “mandatory and jurisdictional,” the Supreme Court emphasized the importance of such language. United States v. Robinson, 361 U.S. 220, 224-26, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). In Robinson, the Court not only rested on Rule 45(b)’s “plain and clear” language of restriction, reading it to prohibit a court’s recognition of a late notice of appeal, but also explained that”[i]t is quite significant that [the rule] not only prohibits the court from enlarging the period for taking an appeal, but, by the same language in the same sentence, also prohibits enlargement of the period for taking any action under Rules 33, 34 and 35, except as provided in those Rules.” Prior cases interpreting the latter rules, the court emphasized, had concluded that while, for example, the “literal language of Rule [33 regarding motions for new trial] places ... limit[s] only on the making of the motion,” Rule 45(b) “prescribe[s] precise times within which the power of the courts must be confined.” Id. at 224-26, 80 S.Ct. 282 (1960).
But even apart from the majority’s failure to recognize the historical and structural explanation for the characterization of Rules 4 and 59 as “jurisdictional,” the majority’s explanation of how these rules could be called “jurisdictional” under Kon-trick cannot be reconciled with the Supreme Court’s analysis in that case. After explaining that “[o]nly Congress may determine a lower federal court’s subject-matter jurisdiction” and discussing the misleading description of some court rules as “jurisdictional” historically, the Kon-trick Court urged that “[c]larity would be facilitated if courts and litigants used the label ‘jurisdictional’ not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) ... falling within a court’s adjudicatory authority.” — U.S. at -, 124 S.Ct. at 915 (emphases added). The majority attempts to characterize trials and appeals as different “classes of cases” “in the language of Kontrick” for the purposes of subject-matter jurisdiction and, while admitting that the Supreme Court might eventually hold to the contrary, essentially concludes that because the limitations of Rules 4 and 59 relate to the transition of a case between trial and appeal, they are “jurisdictional” as meant by Kontrick. Ante at 392-93.
Despite the precatory phrasing of Kon-trick ’s instruction as to the proper use of “jurisdictional,” there is no suggestion that the Court meant for “subject-matter jurisdiction,” the determination of which, only paragraphs earlier, the Court explained was the exclusive province of Congress, to have anything but its ordinary meaning, a meaning that does not at all support the *402 majority’s conclusions. Indeed, the majority’s analysis in this regard neglects the axioms of “subject-matter jurisdiction” recited in Kontrick and that opinion’s application of those principles to support its analogous conclusion about the time limitations at issue in that case. See — U.S. at -, 124 S.Ct. at 914. Quite simply, just as with the “time constraints applicable to objections to discharge ... contained in Bankruptcy Rules” 4004(a) and (b) and 9006(b), FRAP 4 and FRCP 59 are “Court-prescribed ‘rules of practice and procedure’ ” authorized by the Rules Enabling Act, in this case 28 U.S.C. § 2072. Id. “It is axiomatic that such rules do not create or withdraw federal [subject-matter] jurisdiction.” Id.; accord Willy v. Coastal Corp., 503 U.S. 131, 135, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (“federal courts, in adopting rules, [a]re not free to extend or restrict the jurisdiction conferred by a statute.”).
That such is undeniably true for Rule 59 is borne out by the Federal Rules of Civil Procedure’s explicit command that “[t]hese rules shall not be construed to extend or limit the [subject-matter] jurisdiction of the United States district courts.” Kontrick, — U.S. at -, 124 S.Ct. at 914 (quoting Fed.R.Civ.P. 82).
The case for FRAP 4 is somewhat less straightforward due to the absence of a counterpart to FRCP 82 in the Federal Rules of Appellate Procedure. As a general matter, Congress has not granted the Supreme Court the authority to promulgate Federal Rules of Appellate Procedure that enlarge or diminish the subject-matter jurisdiction of the courts of appeals, and the version of FRCP 82 contained in the pre-2002 version of those rules (i.e., former FRAP 1(b)) reflected that fact. See, e.g., 16A Charles A. Wright et al., Fed. Prac. & Proc. Juris.3d § 3947.1 (1999 & Supp.2004) (noting that “purported conflict” between the prohibition of Rule 1(b) and the “jurisdictional” limitations of Rules 3 and 4 “was not so much a direct conflict as it was a reflection of the ‘chameleon quality’ of the word ‘jurisdiction.’ ”) (citation omitted). However, Rule 1(b) was deemed abrogated in 2002, in recognition of statutory amendments that allowed the Supreme Court to issue rules “to define finality for purposes of [28 U.S.C. § 1291]” and “to authorize interlocutory appeals not provided for by [28 U.S.C. § 1292].” Fed. R.App. P. 1, adv. comm, notes, 2002 amends. According to the Advisory Committee, once this power was exercised with respect to these “unquestionably jurisdictional statutes,” some Federal Rules of Appellate Procedure would, in fact, “extend or limit the jurisdiction of the courts of appeals,” obsoleting Rule 1(b). Id.
But FRAP 4 was not promulgated pursuant to either amendment, nor is there any indication that Congress similarly delegated any authority to the Supreme Court to interpret or expand on the statutory time limits on civil appeals set forth in 28 U.S.C. § 2107 (which, however, may be independently subject-matter jurisdictional, see Kontrick, — U.S. at ——- & n. 8, 124 S.Ct. at 914 & n. 8). Of course, that Congress, in making the above-noted amendments, felt compelled to explicitly authorize the issuance of court rules of jurisdictional effect suggests that court rules authorized by section 2072 alone lack such force, even when they are similar to pre-existing statutory requirements.
B.
That Rule 11(c) is not subject-matter jurisdictional does not, as I suggest above, resolve the question of its waivability. While it seems clear that the Supreme Court meant to criticize the use of the label “jurisdictional” for court rules that, like Rules 4 and 59, do not affect a court’s *403 subject-matter jurisdiction, there is little evidence to suggest that Kontrick meant to upset the settled understandings of the effect of non-compliance with these rules, notwithstanding a court’s statutory jurisdiction over the subject matter of the case. The requirements of Rule 4, for example, cannot be waived; accordingly, a court is not prohibited from considering a belated motion to dismiss for an untimely notice of appeal. See, e.g., Torres v. Oakland ScavengerCo., 487 U.S. 312, 317, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). Thus, provided that the legal effect of these rules was not changed sub silentio by the Court in Kontrick, rules like these would comprise a third category of rules beyond the two mentioned in Kontrick, presenting the question of whether Rule 11(c) might not fall within such a third category.
That said, the time limitations imposed by FRCP 6(b) on FRCP 59, and by FRAP 26(b) on FRAP 4, are strikingly similar in language and structure to the time limitations imposed by the Bankruptcy Rules in Kontrick.[2] While the latter rules lack the former’s pedigree, if Kontrick truly requires that all court rules be either subject-matter jurisdictional, and thus unwaivable, or “claim-processing rules,” and thus forfeitable, then principled distinction of the two sets of rules might be impossible, meaning that both sets of rules could be waived.
Kontrick, however, was decided in the limited context of “pleadings” and responses thereto. From its opening sentence, which notes (consistent with the Federal Rules of Bankruptcy Procedure) that Ryan’s objections to discharge were included in a “pleading,” — U.S. at ---, 124 S.Ct. at 910, to its ultimate description of the time limitations at issue as “complaint-processing rules,” id. at 918 (emphasis added), Kontrick’s use of the rules governing, and terminology of, pleadings and responses thereto is pervasive. The opinion concludes that, although, by rule, FRCP 12(b)-(h) governed that adversary proceeding, and FRCP 12(h) preserves certain defenses beyond the initial response, under that rule “[o]nly subject-matter jurisdiction is preserved post-trial.” Id. at 917-18. Characterizing Kontrick’s argument as an affirmative defense, the Court held that because he “failed to assert the time constraints ... in a pleading or amended pleading responsive to [the] amended complaint” and because that defense was not subject-matter jurisdictional, it was forfeited. Id.
Given the obvious implications of Kon-trick for other “jurisdictional” court rules, I doubt that this emphasis was accidental and, in any event, I would proceed on the assumption that it was not. Of particular note for Kontrick’s prospective applicability is that the relevant requirements of Rule 12 apply only to defenses to “pleadings.” That term, of course, is one of art under the Federal Rules of Civil Procedure, limited to those papers defined to be such in FRCP 7, a rule that “distinguishes between ‘pleadings,’ which include [‘a complaint’ and] ‘an answer,’ and ‘motions and other papers.’” Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir.2000). While a notice of appeal is (somewhat obviously) not *404 a “pleading” under these rules, neither are motions for a new trial or for sanctions pursuant to Rule 11. An objection based on non-compliance with the relevant time limitations for filing of these documents is therefore not subject to Rule 12’s provisions regarding the presentation and preservation of defenses to pleadings; as such, Kontrick does not squarely control in such a context whether that objection can be waived.
This is a fine distinction, but I think it is a real and justifiable one.[3] The distinction runs throughout Kontrick, and stands ready to be developed by the Court in the appropriate case. Especially given that overruling by implication is disfavored, I believe that the ultimate conclusions of the Rule 4 and 59 cases as to their character must remain unchanged by Kontrick, and, accordingly, that these rules fall into a third category of rules which, while not limiting the court’s subject-matter jurisdiction, have the effect of jurisdictional limitations and, therefore may neither be waived by a party, nor ignored by a court.[4]
II.
However this third category is precisely delineated, I believe that it encompasses Rule 11(c) and that Rule’s safe harbor provisions. Those provisions are sufficiently analogous, in language, structure, and purpose, to either Rule 4 or Rule 59 as to warrant an equivalent interpretation, as well as the overruling of Rector v. Approved Fed. Sav. Bank, 265 F.3d 248 (4th Cir.2001). In particular, I note that, as with those rules (through reference to their respective restriction on enlargements of time), Rule 11(c) places direct limitations on the court’s authority to take a certain action except under certain conditions. Indeed, if anything, the structural ease for Rule ll(c)’s unwaivability is slightly stronger, given that its conditions are more directly linked to the ultimate action that is limited. That is, for Rule 6(b), it is the court’s authority to enlarge periods set for filing certain papers that is expressly limited; from which it is inferred that recognizing such papers when untimely is implicitly to enlarge the restricted period. See Robinson, 361 U.S. at 224, 80 S.Ct. 282. Rule 11(c), however, limits the court’s authority to grant sanctions on a party’s motion, directly conditioning that authority on satisfaction of the Rule ll’s safe harbor provisions.
Arguably, the case for the unwaivability of Rule 6(b), for example, is made clearer by the juxtaposition of permissive language specifying when an enlargement of time may be granted generally, with re *405 strictive language specifying for what rules it may not be granted except as provided for in those same rules. See supra at 2 n. 1. But, in the end, this distinction is immaterial; as with the above-noted juxtaposition, the phrasing “may, subject to the conditions stated below” in Rule 11(c) suggests, on the one hand, a grant of discretion (“may” as opposed to “shall”) to impose sanctions when warranted but, on the other, makes clear that the exercise of that discretion is predicated on satisfaction of the conditions listed in subdivision (c)(1)(A) (“subject to the[se] conditions”). Indeed, as both the majority and Judge King conclude, the safe harbor provisions must be read as conditions precedent to granting sanctions. Such a construction is entirely consistent with the Advisory Committee Notes regarding Rule 11(c), and in particular with its unequivocal statement that the amended rule now provides a “safe harbor” so that “a party will not be subject to sanctions on the basis of another party’s motion unless, after receiving the motion,” the responding party declines its opportunity to modify or withdraw its contention. Fed.R.Civ.P. 11, adv. comm, notes, 1993 amends, (emphases added); see also post at 31 & n.* (discussing committee notes). Therefore, satisfaction of these conditions seems no less a mandatory prerequisite to the imposition of Rule 11 sanctions on a party’s motion, than compliance with the notice of appeal requirements set out in Rule 4, which do not limit an appellate court’s subject-matter jurisdiction, seems a “mandatory precondition to the exercise of [appellate] jurisdiction.”[5]
III.
It is not often that the Federal Rules of Civil Procedure grant a court the discretionary authority to take a certain action, but expressly prohibit the court’s exercise of that discretion except upon a party’s compliance with specified conditions. When such is the case, and it is clear that those conditions are mandatory prerequisites to the court’s power to take that action — which is the interpretation of Rule 11(c) and the safe harbor provisions adopted by the majority, with which I concur — I believe that unnoticed non-compliance with those conditions, just as with the conditions of Rules 4, 59, and like rules, requires more than just additional weight in an ultimately discretionary plain-error analysis. But if I am wrong, and an objection of non-compliance with the safe harbor provisions may be forfeited, then no one should be under any illusion as to the consequences: A principled analysis would require the same for the traditionally “jurisdictional” rules, such as Rules 4 and 59. It is for these reasons that I only concur in part and concur in the judgment reached by the court today.

. For example, FRCP 6(b) initially provides that "the court for cause shown may at any time in its discretion" order a period enlarged if request is made before expiration of the *401 period or, if a request is made thereafter, for "excusable neglect.” The rule then specifies, however, that "[a court] may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them.” As the Court observed in Kontrick, it is Rule 6(b) (and its counterpart, FRCrP 45(b)) that are "mandatory and jurisdictional,” — U.S. at -, 124 S.Ct. at 915 (quoting Robinson, 361 U.S. at 228-29, 80 S.Ct. 282); Rule 59 is of the same character because of its reference in Rule 6(b). FRAP 4 is likewise referenced by a similar provision, FRAP 26(b), which authorizes extensions of time for good cause generally, but prohibits extending the time for filing a notice of appeal "except as authorized in Rule 4.” But perhaps even more important historically is that the notice of appeal requirements for civil and criminal cases were previously set forth in FRCP 73(a) and FRCrP 37(a)(2), and referenced by the respective prohibitions on enlargements of time. The advisory notes for Rule 4’s adoption make clear that the transitions from those rules to Rules 4(a) (civil appeals) and (b) (criminal appeals) were made "without any change of substance.” Fed. R.App. P. 4, adv. comm, notes, 1967 adoption.

. For example, both sets of rules require litigants make the required filing within a certain period. Both sets instruct "the court on the limits of its discretion to grant motions for ... enlargements” of the time for filing. Kontrick, - U.S. at -, 124 S.Ct. at 916. And both sets limit that discretion by allowing a court to extend a period for cause if the request is made within the period, but specify that for certain rules the court cannot extend the period except "to the extent and under the conditions” stated in the particular rules. Compare Fed.R.Civ.P. 6(b) and Fed.R.App. Proc. 26(b) with Fed. R. Bkrtcy. P. 4004(b), 9006(b)(3).

. If nothing else, this distinction is appropriate given the inapplicability of the pleading framework (which makes the end of trial the deadline for raising non-jurisdictional defenses) to objections to “motions and other papers” that must be filed after the end of trial or, at least, could be so filed.

. While the issue is likely for the Supreme Court alone to decide, the sounder course may be to hold that non-compliance with court rules like Rule 4, which impose deadlines for filing motions or other papers (separate from non-compliance with similar statutory commands), may be subjected to plain-error review when not timely asserted (i.e., when forfeited), but that such error, when plain and affecting substantial rights, must be addressed. Even when the parties fail to notice non-compliance with these rules, a court that takes the prohibited action has not complied with its own obligation to ensure that mandatory prerequisites to that action are fulfilled. Arguably, plain and substantial errors of this type necessarily "seriously affectf] the fairness, integrity or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Of course, under this framework, non-compliance with such rules, where the rule has been intentionally waived *405 ias opposed to forfeited), would remain unre-viewable. See id. at 733, 113 S.Ct. 1770.

. Mann v. Lynaugh, 840 F.2d 1194, 1197 (5th Cir.1988). The latter phrase is reminiscent of explanations that have been offered in the past — and that I expect will be offered more frequently after Kontrick — of Rule 4's traditional interpretation, given that the rule "do[es] not, in a strict sense, affect the subject matter jurisdiction of the courts of appeals.” Wright, supra (citation omitted)